IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| **KAHLEY CLEVELAND and** | | |
| **RYAN J. SCOTT** ) | Civil Action Number: |
|   6060 Father Caruso Drive #2101 | | |
|   Cleveland, OH 44102 ) | | |
| | | |
|       and ) | | |
| | | |
| **HOUSING RESEARCH & ADVO-** ) | | |
| **CACY CENTER dba** | | |
| **FAIR HOUSING CENTER FOR** ) | | |
| **RIGHTS & RESEARCH** | | |
|   2728 Euclid Avenue, Suite 200 ) | | |
|   Cleveland, OH 44115 | | |
| ) | | |
|        Plaintiffs, ) | | |
| | | |
|     -vs- ) | **C O M P L A I N T** |
| ) | | |
| **THE NRP GROUP, LLC** | | |
|   c/o J. DAVID HELLER, ) | | |
|   REGISTERED AGENT | | |
|     1228 Euclid Avenue, 4th Floor ) | Trial by Jury Endorsed Hereon |
|     Cleveland, OH 44115 | | |
| ) | | |
|       and | | |
| ) | | |
| **EDISON AT GORDON SQUARE,** | | |
| **LLC** ) | | |
|   c/o ACFB INCORPORATED, | | |

| | |
|---|---|
| REGISTERED AGENT | |
| 200 Public Square | ) |
| Suite 2300 | |
| Cleveland, OH 44114 | ) |
| and | |
| | ) |
| **ACFB INCORPORATED** | |
| c/o IRA C. KAPLAN, | ) |
| REGISTERED AGENT | |
| 200 Public Square | ) |
| Suite 2300 | |
| Cleveland, OH 44114 | ) |
| and | ) |
| Veronica Albino | ) |
| **EDISON AT GORDON SQUARE, LLC** | ) |
| 6060 Father Caruso Drive | |
| Cleveland, OH 44102 | ) |
| Defendants. | ) |

## INTRODUCTION

1. This action is instituted to seek relief against violations of federally secured rights of fair housing on the basis of familial status and for otherwise making housing unavailable in retaliation for the exercise of a federally protected right under the laws of the United States.

## CLAIMS AND JURISDICTION

2. This action is brought pursuant to Title VIII of the Civil Rights Act of 1968, as amended, the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*. (2021 Supp.), the Ohio Fair Housing Act, Ohio Revised Code Chapter 4112 (2021 Supp.), to supplemental pendent state claims asserted under 28 U.S.C. §1367 and, to the extent declaratory relief is sought, 28 U.S.C. §§ 2201-2202. Jurisdiction is invoked pursuant to §§ 3613 and 3617 of Title VIII of the Civil Rights Act of 1968, as amended, Sections 813 and 818 of the Fair Housing Act, and 28 U.S.C. §§ 1343(3) and (4).

## PARTIES

3. Plaintiffs KAHLEY CLEVELAND and RYAN J. SCOTT (hereinafter resident Plaintiffs or Kahley and Ryan) are citizens of the United States and are residents of a multi-unit residential dwelling situated at 6060 Father Caruso Drive, Cleveland, Ohio known as The Edison at Gordon Square.

4. Plaintiff the HOUSING RESEARCH & ADVOCACY CENTER dba the FAIR HOUSING CENTER FOR RIGHTS & RESEARCH (hereinafter, institutional Plaintiff or Fair Housing Center) is the preeminent local institutional fair housing advocacy organization in Northeast Ohio whose mission is to protect and expand fair housing rights, eliminate housing discrimination, and promote integrated communities.

5. The Fair Housing Center has as its objective the elimination of unlawfully discriminatory housing practices throughout Northeast Ohio by challenging discriminatory housing practices through education and enforcement, by protecting homeseekers and others against unlawfully discriminatory housing practices, by participating in the enforcement of federal and state fair housing laws, by researching housing practices which have the purpose or effect of limiting equal housing opportunities prohibited by law, by outreaching to citizens, municipalities, communities and related industries about fair housing and by researching housing and related issues, all of which require the expenditure of institutional resources in achieving equal housing opportunities for all.

6. Defendant, THE NRP GROUP, LLC, is an owner and manager of multi-unit residential dwellings including The Edison at Gordon Square and is responsible for all policies, practices, acts and conduct related to the marketing, rental, admission and termination of residency and is otherwise responsible, *inter alia*, for compliance with federal fair housing law and equivalent state fair housing law.

7. Defendant, EDISON AT GORDEN SQUARE, LLC, is an owner and manager of a multi-unit residential dwelling, The Edison at Gordon Square, and is responsible for all policies, practices, acts and conduct related to the

marketing, rental, admission and termination of residency and is otherwise responsible, *inter alia*, for compliance with federal fair housing law and equivalent state fair housing law.

8. Defendant, ACFB INCORPORATED, is an owner and manager of a multi-unit residential dwelling, The Edison at Gordon Square, and is responsible for all policies, practices, acts and conduct related to the marketing, rental, admission and termination of residency and is otherwise responsible, *inter alia*, for compliance with federal fair housing law and equivalent state fair housing law.

9. Defendant, VERONICA ALBINO, is the representative rental agent of the Defendant with the designation of "Community Assistant."

10. Ms. Albino, as Defendants' "Community Assistant," is required to enforce the rental policies established by the other Defendants at The Edison at Gordon Square, and is responsible for all policies, practices, acts and conduct related to the marketing, rental, admission and termination of residency and is otherwise responsible, *inter alia*, for compliance with federal fair housing law and equivalent state fair housing law.

## COUNT I

## Violations of Section 804 (a) of the Fair Housing Act, 42 U.S.C. § 3604 (a) and the equivalent state law

11. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

12. Since June 17, 2017, Kahley Cleveland and Ryan Scott, as residential Plaintiffs, have lived at The Edison at Gordon Square.

13. Kahley and Ryan live in a suite with one-bedroom and a den.

14. Since the commencement of their tenancy Kahley and Ryan sought and were offered by Defendants an annual lease in the following manner:

> (a) From June 17, 2017 through June 16, 2018, Defendants provided an annual lease to Kahley and Ryan which required $1,590.00 for the rent each month;
>
> (b) Offered in March, 2018, from June 17, 2018 through June 16, 2019, Defendants provided an annual lease to Kahley and Ryan which required $1,590 for the rent each month;
>
> (c) Offered in March, 2019, from June 17, 2019 through June 16, 2020, Defendants provided an annual lease to Kahley and Ryan which required $1,590 for the rent each month;
>
> (d) Offered in March, 2020, from June 17, 2020 through June 16, 2021, Defendants provided an annual lease to Kahley and Ryan which required $1,625 for the rent each month.

15. On August 1, 2020, Kahley and Ryan had a baby, Aria.

16. Aria stayed in Kahley and Ryan's room in a crib for most of the remainder of 2020 while they readied her room.

17. In March 2021, contrary to the practice of the Defendants, Kahley and Ryan did not receive a lease renewal notice which had been Defendants' standard practice.

18. During the afternoon of Thursday, April 11, 2021, Kahley went to the rental office to pick up a package.

19. Veronica Albino, while very professional, advised Kahley that she had some "bad news" and that she had been meaning to talk with her and Ryan.

20. Kahley was told directly by Ms. Albino that no lease renewal would be offered "because of the baby."

21. Based on The Edison at Gordon Square's "occupancy rule," she explained, the lease would not be renewed because they had "outgrown" their unit.

22. Ms. Albino made clear she did not create the anti-baby rule at The Edison at Gordon Square, but she acknowledged because of the birth of Aria, they would have to leave their home.

23. Ms. Albino indicated that there would be two-bedroom apartments available at a cost of $400.00-$600.00 more per month.

24. Ms. Albino acknowledged how hurt and distressed the family was.

25. She indicated that she understood and was supportive of the "fight" to challenge the rule because, as good tenants and nice people, she wanted to see them stay at The Edison at Gordon Square.

26. Starting on April 5, 2021, Kahley pursued inquiries about fair housing, square footage requirements, occupancy standards and fair housing laws.

27. A variety of fair housing agencies responded and provided information why the anti-baby rule at The Edison at Gordon Square would violate federal and state fair housing laws.

28. Between the government agency enforcing fair housing laws, the Ohio Civil Rights Commission, and a fair housing non-profit, the Fair Housing Center, Kahley was armed with substantial data and information why the anti-baby rule violated state and federal fair housing laws which had been in effect for decades.

29. On Monday, April 12, 2021, Kahley spoke with Kris Keniray, Associate Director of the Fair Housing Center, to inquire about her family's rights and protection under applicable fair housing laws.

30. At a 5:00 p.m. meeting on Monday, April 12, 2021, Ms. Albino showed them a two-bedroom apartment.

31. The cost of the two-bedroom apartment would be about $500.00 more per month, a radical departure from the rent they had been paying and had a view of a roof.

32. Plaintiffs were informed they would have to pay a $400 transfer fee, $150 in application fees to reapply for the more expensive unit, along with an additional $300 for the new security deposit.

33. At the meeting, Kahley presented to Veronica information that building code established that the space in which they were presently living was well suited for them and an infant.

34. Ms. Albino was unfamiliar with the legal requirements concerning sufficient square footage and the fair housing laws, although she referred to "occupancy guidelines" and "fair housing guidelines" interchangeably.

35. Kahley explained that her diligent pursuit of information objecting to the discriminatory actions of The Edison at Gordon Square came from her outreach to the Ohio Civil Rights Commission, a federally protected right under the Fair Housing Act.

36. While Kahley was professional and cordial in her advocacy, having been armed with information about her fair housing rights, Ms. Albino appeared to understand why she was crushed in losing her home.

37. Throughout the remainder of April and into May, Kahley continued to advocate for a lease, advising that she, Ryan and Aria would leave after a year's lease because it was their intent to buy their first home.

38. In regular communication with Veronica Albino and her superior, Kelly Bird, at The Edison, Ms. Albino and Ms. Bird indicated that they would have to defer to "the legal team."

39. As the end drew nearer and because Defendants knew Kahley and Ryan learned about their fair housing rights and engaged in a federally protected right in their outreach to enforcement agencies, Defendants changed their stance to say "NRP Management has approved your request for an exception to the occupancy guidelines."

40. Albino and Bird conveyed the "change" by Defendants with a May 11th written confirmation.

41. The "exception" was actually a penalty for engaging in the federally protected activity.

42. The "exception" by NRP Management was that they could remain in their home, but only "a month-to-month basis" and for a maximum of six months time.

43. And the rent increase would be One Thousand Six Hundred and Fourteen percent (1,614%) over their last rent increase.

44. Defendants have a statutory duty under federal and state law not to engage in practices which have the purpose or effect of discrimination in housing on account of familial status.

45. Defendants engaged in an unlawfully discriminatory housing practice by refusing to re-rent to Kahley, Ryan and Aria their suite on account of familial status.

46. Despite an Act of Congress outlawing familial status discrimination in refusing to rent for over thirty years, Defendants have employed intentionality to their practices in order to limit and discourage equal housing opportunity on account of Kahley and Ryan having a baby.

47. Because of the unique nature of housing, as a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

48. The acts and conduct of the Defendants have been and continue to be deliberate, intentional and in wanton and reckless disregard of the rights and feelings of the Plaintiffs.

49. As a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer the deprivation of a federally protected right of fair housing, emotional pain, substantial anxiety and humiliation, and irreparable physical inconvenience.

## COUNT II

**Violations of Section 804 (b) of the Fair Housing Act, 42 U.S.C. § 3604 (b) and the equivalent state law**

50. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

51. Defendants have offered to Plaintiffs terms and conditions different than those without a child living in a one-bedroom apartment.

52. Defendants' "exception" to its restrictive policy is to force Plaintiffs to lose the protection of an annual lease and to depart radically from the normal rent increases Plaintiffs have been given since 2017.

53. As a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

54. As a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer substantial emotional pain, great anxiety, physical injury and significant and irreparable physical inconvenience.

55. The acts and conduct of the Defendants have been and continue to be deliberate, intentional and in wanton and reckless disregard of the rights and feelings of the Plaintiffs.

56. Plaintiffs have endured and continue to endure damages as a result of Defendants deliberate and intentional violation of Title VIII of the Civil Rights Act of 1968, as amended, and its equivalent state fair housing law provisions.

## COUNT III

**Violations of Section 804 (c) of the Fair Housing Act, 42 U.S.C. § 3604 (c) and the equivalent state law**

57. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

58. Defendants have a duty under federal and state law not to engage not to state a preference, limitation or discrimination on the basis of familial status.

59. Defendants are aware and continue to be aware that restricting the Plaintiffs from remaining in their suite by charging wildly greater rents and without the protection of an annual lease has been and continue to be intentional and in wanton and reckless disregard of federally secured and protected rights and feelings of the Plaintiffs.

60. As a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

61. As a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer substantial emotional pain, great anxiety and humiliation, physical injury and significant and irreparable physical inconvenience.

62. The acts and conduct of the Defendants have been and continue to be deliberate, intentional and in wanton and reckless disregard of the rights and feelings of the Plaintiffs.

63. Plaintiffs have endured and continue to endure damages as a result of Defendants deliberate and intentional violation of Title VIII of the Civil Rights Act of 1968, as amended, and its equivalent state fair housing law provisions.

## COUNT IV

### Violations of Section 818 of the Fair Housing Act, 42 U.S.C. § 3617 and equivalent state law

64. Plaintiffs reassert the foregoing allegations and incorporate them by reference as if fully set forth herein.

65. Defendants have a duty under federal and state law not to engage in housing discrimination on the basis of familial status and have a duty not to coerce, intimidate or interfere with federally protected fair housing rights and in the exercise of a federally protected right of advising Defendants of that exercise.

66. Defendants knew that, once Plaintiffs learned about the protections of the Fair Housing Act and advised representatives of the Defendants, they had exercised those rights with the Ohio Civil Rights Commission and the Fair

Housing Center and Defendants engaged in actions which have the purpose and effect of coercion, intimidation and interference with federally protected fair housing rights.

67. As a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

68. As a direct consequence and result of the acts and conduct of the Defendants, Plaintiffs have suffered and continue to suffer substantial emotional pain, great anxiety and humiliation, physical injury and significant and irreparable physical inconvenience.

69. The acts and conduct of the Defendants have been and continue to be deliberate, intentional and in wanton and reckless disregard of the rights and feelings of the Plaintiffs.

70. Plaintiffs have endured and continue to endure damages as a result of Defendants deliberate and intentional violation of Title VIII of the Civil Rights Act of 1968, as amended, and its equivalent state fair housing law provisions.

## COUNT V

**Violations of the Fair Housing Act Rights of the Fair Housing Center, 42 U.S.C. §§ 3601, *et seq*. and equivalent state law**

71. Plaintiff Fair Housing Center reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

72. The continuing obstruction and interference with federally protected fair housing rights thwarts of objectives and goals of the Fair Housing Center to eliminate discriminatory practices in the Greater Cleveland and Northeast Ohio area.

73. Although Defendants have a duty under federal and state law not to engage in housing discrimination based on familial status and have a duty not to coerce, intimidate or interfere with federally protected fair housing rights and in the exercise of a federally protected right of a family advising Defendants of that exercise, Defendants engaged in overt violations of the Fair Housing Act and its state law equivalent.

74. Plaintiff Fair Housing Center has been obligated to divert its resources in education and similar undertakings in order to provide aid and assistance to residents of the community.

75. Because the acts and conduct of the Defendants appear to be intentional, reckless and in wanton and reckless violation of the Fair Housing Act, Defendants have subverted the on-going efforts of the Fair Housing Center to devote resources away from a variety of activities which seek to eliminate housing discrimination.

76. The diversion of resources in this case involved matters which have been clearly resolved over the years in prohibiting owners and managers of residential dwellings from continuing to engage in unlawfully discriminatory housing practices.

77. The experiences of familiar status discrimination suffered by the residential Plaintiffs by a major real estate company such as Defendants demonstrate the need and importance of the policies and practices of the Fair Housing Center to undertake additional research and investigation of the overt discriminatory practices such as those reflected in the present litigation.

78. In the absence of comprehensive monitoring and education of Defendants, violations of federal law will continue unabated.

79. The Fair Housing Center is the only community-based and staffed fair housing resource available to persons living in Cleveland, Ohio which seek out competent and knowledgeable direction and advice concerning fair housing rights.

80. The acts and conduct of the Defendants have the purpose and effort of diverting limited resources of the Fair Housing Center and detract its ability to engage in a multitude of activities involving education and research in order to assist persons within the community.

81. The diversion of resources directly relate to the intentional wrongdoing of the Defendants.

82. Defendants knew that, once Plaintiffs learned about the protections of the Fair Housing Act and advised representatives of the Defendants that they had exercised those rights with the Ohio Civil Rights Commission and the Fair Housing Center, they engaged in actions which had the purpose and effect of coercion, intimidation and interference with federally protected fair housing rights.

83. As a direct consequence and result of the wanton and reckless actions of the Defendants, Plaintiff Fair Housing Center has suffered damages.

WHEREFORE, Plaintiffs Kahley Cleveland and Ryan Scott, along with Plaintiff Fair Housing Center, urge this Court to grant the following relief:

> A. Declare that the acts and conduct of the defendants constitute a violations of Section 804 (a) of the federal Fair Housing Act, 42 U.S.C. § 3604(a), Section 804(b) of the federal Fair Housing Act, 42 U.S.C. §3604(b), Section 804(c) of the Fair Housing Act, and anti-intimidation and anti-coercion provisions of Section 818 of the Fair Housing Act, 42 U.S.C. §3617, Title VIII of the Civil Rights Act of 1968, and the comparable sections of the Ohio Fair Housing Act, Ohio Revised Code Chapter 4112, the anti-retaliation provisions of the Ohio Landlord/Tenant Act, Ohio Revised Code § 5321.02 and pendent state law claims and to further declare that the objectives and goals of Plaintiff Fair Housing Center have been thwarted by the acts and

conduct of the Defendants and have otherwise been required to divert resources to this matter as a result of the intentional acts and conduct of the Defendants;

B. Pursuant to Sections 813 and 818 of the Civil Rights Act of 1968, as amended, the Fair Housing Act, 42 U.S.C. §§ 3613 and 3617, permanently enjoin the Defendants from engaging in any future act of denying persons equal housing opportunities on account of familial status by engaging in acts of intimidation, coercion and interference with the exercise of federally protected rights prohibited by Section 818 of the Act;

C. Direct that the Defendants engage in affirmative fair housing marketing to correct the effects of their discriminatory housing practices, including, but not limited to:

(1) the development of a compliance monitoring system which will provide tracking on the basis of familial status of the applicant; (2) the participation in a continuing fair housing educational program to be taken by each and every Defendant and each and every Defendants' representative, employee or agent and (3) the utilization in all forms of advertising the phrase "Equal Housing Opportunity" or the utilization of the Fair Housing Logo.



D. Grant to the Plaintiffs and against Defendants, jointly and severally, appropriate compensatory and appropriate punitive damages;

E. Grant to the Plaintiffs and against Defendants, jointly and severally, costs and a reasonable attorney fee as provided by statute;

F. Grant any additional relief which the court deems just, equitable and in the public interest.

/s/ Avery Friedman
AVERY FRIEDMAN (0006103)
701 The City Club Building
850 Euclid Avenue
Cleveland, OH 44114
P: (216) 621-9282
F: (216) 621-9283
W: averyfriedman.com
avery@lawfriedman.com
fairhousing@gmail.com

Attorney for Plaintiffs Kahley Cleveland, Ryan J. Scott and the Fair Housing Center

## **TRIAL BY JURY DEMANDED**

Plaintiffs demand trial by jury.

/s/ Avery Friedman
AVERY FRIEDMAN